# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **KENNETH MARK LORENC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **Case No. 5:14-CV-00860-SLB** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Kenneth Mark Lorenc brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). After review of the record, the parties' submissions, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Lorenc applied for DIB and SSI on November 29, 2010, alleging a disability onset date of October 27, 2010. (R. 195, 197).[1] The Social Security Administration denied Lorenc's applications on May 10, 2011. (R. 154). He requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 27, 2012. (R. 98). The ALJ denied his applications on July 25, 2012. (R. 91).

---

[1] Citations to a document number, ("Doc. __"), refer to the number assigned to each document as it is filed in the court's record. Citations to page numbers in the Commissioner's record are set forth as ("R.__").

On September 11, 2012, Lorenc petitioned the Appeals Council to review the ALJ's decision. (R. 63-66). On March 10, 2014, the Appeals Council denied his request for review, thereby rendering the ALJ's decision the final decision of the Commissioner of Social Security. (R. 1). Lorenc appealed to this court on May 8, 2014. (Doc. 1).

## II. <u>STANDARD OF REVIEW</u>

This court reviews *de novo* the Commissioner's conclusions of law and reviews her factual findings to determine whether they are supported by substantial evidence. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). Substantial evidence is "relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (quotation and citation omitted).

## III. <u>DISCUSSION</u>

### A. THE FIVE-STEP EVALUATION

The Commissioner follows a five-step sequential evaluation to determine whether a claimant is disabled and eligible for DIB or SSI. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. City of New York*, 476 U.S. 467, 470, 106 S.Ct. 2022, 2025, 90 L.Ed.2d 462 (1986) ("The regulations for both programs are essentially the same . . ."). For the purpose of this evaluation, "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 416(i)(1)(A); *see id*. § 423(d)(1)(A).

#### 1. Substantial Gainful Activity

First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity" as defined by the regulations. 20 C.F.R.

2

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *see id*. §§ 404.1572, 416.972.  If the claimant is so engaged, he is not disabled.  *Id*. §§ 404.1520(b), 416.920(b).  Here, the ALJ determined that Lorenc had not engaged in substantial gainful activity since the alleged onset date of October 27, 2010.  (R. 76).

### 2.  Severe Impairments

If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether he suffers from a severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c).  If the claimant does not have such an impairment or impairments, he is not disabled.  *Id*. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Lorenc had severe impairments of history of coronary artery disease with implantable cardioverter-defibrillator ("ICD"), hypertension, obesity, suspected frozen shoulder, and depression disorder NOS with chronic anxiety.  (R. 76).

### 3.  The Listings

If the claimant has severe impairments, the Commissioner determines whether, alone or in combination, they meet the duration requirement and whether they are equivalent to any one of the listed impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see id*. §§ 404.1523, 404.1525, 404.1526, 416.923, 416.925, 416.926.  If the impairments are equivalent to one of the listed impairments, the claimant is disabled.  *Id*. §§ 404.1520(d), 416.920(d).  Here, the ALJ found that Lorenc's impairments, alone and in combination, were not equivalent to one of the listed impairments.  (R. 78).

### 4.  Residual Functional Capacity and Past Relevant Work

If the impairments are not equivalent to one of the listed impairments, the Commissioner assesses the claimant's residual functional capacity ("RFC"), which is the most the claimant can do despite the limitations.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(1), 416.920(a)(4)(iv), 416.945(a)(1).  She considers all of the claimant's medical impairments in determining the RFC.  *Id*. §§ 404.1545(a)(2), 416.945(a)(2).  Then, she determines whether, considering the RFC, the claimant can perform his past relevant work.  *Id*. §§ 404.1520(a)(4)(iv) & (f), 416.920(a)(4)(iv) & (f).  If the claimant is capable of performing his past relevant work, he is not disabled.  *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Here, the ALJ determined that Lorenc had an RFC to perform sedentary work that is unskilled and does not require him to reach to shoulder height or above with his left, non-dominant arm, avoids exposure to temperature extremes, pulmonary irritants, such as fumes, gases, and smoke, and occupational hazards, such as unprotected heights, commercial driving, and moving machinery.  (R. 80).  He was incapable of performing his past relevant work as a construction worker, as it required heavy exertion.  (R. 89).

### 5.  Other Work in the National Economy

If the claimant is unable to perform his past relevant work, the Commissioner determines whether, based on his RFC, age, education, and work experience, he can perform other work that exists in substantial numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(1), 416.920(a)(4)(v), 416.960(c)(1).  If the claimant cannot perform other work, he is disabled.  *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If he can perform other work, he is not disabled.  *Id*.

Here, the ALJ consulted a Vocational Expert ("VE") to determine whether jobs existed in the national economy that Lorenc could perform, considering his RFC, age, education, and work experience. (R. 128).  The VE testified that an individual with Lorenc's limitations and vocational factors could perform the jobs of document preparer, telephone quotation clerk, and addresser, which are jobs that existed in significant numbers in the national economy. (*Id*.).  Because the ALJ found that jobs consistent with Lorenc's RFC and vocational factors existed in significant numbers, she concluded that he was not disabled.  (R. 90).

## B.  LORENC'S CLAIMS

### 1.  Combination of Impairments in Determining RFC

Lorenc argues that the ALJ failed to consider whether the combined effect of his depression and history of coronary artery disease with ICD would prevent him from performing his past work or other work.  (Doc. 9 at 14-17).  He asserts that he has fatigue, lack of energy, loss of sleep, and anxiety, which affect his coronary artery disease symptoms, despite various objective cardiac tests confirming that it is stable. (*Id*. at 16).

When a claimant has more than one impairment, the ALJ must consider whether the combined effect of the impairments render him disabled.  *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991).

Here, the ALJ found that Lorenc had severe impairments of history of coronary artery disease with ICD, hypertension, obesity, suspected frozen shoulder, and depression disorder NOS with chronic anxiety.  (R. 76).  After finding that he did not have "an impairment or combination of impairments" equivalent to a listed impairment, the ALJ determined his RFC.  (R. 78).  In doing so, she considered "all symptoms" testified to by Lorenc, including fatigue, loss of sleep, and anxiety.  (R.

5

80-81).  She determined, while some of the symptoms could reasonably be expected from his impairments, they did not support a finding that he could not perform sedentary, unskilled work activity with certain restrictions.  (R. 81).

The ALJ discussed Lorenc's medical history of heart disease and determined that his coronary artery disease with ICD would prevent him from performing work involving significant exertional demand.  (R. 82).  She stated, "Although the combined effects of the claimant's history of coronary artery disease, hypertension, and obesity would likely prevent him from performing work with a significant exertional demand," he could perform sedentary work.  (R. 84).  She further stated, "given the claimant's continued complaints of intermittent chest pain, as well as a treatment note reflecting the claimant reported exhaustion, lack of energy, and dyspnea with minimal physical exertion," he could only perform sedentary work activity.  His dizziness and shortness of breath from his heart disease, his obesity, and his reported lack of energy and fatigue prevented him from working around fumes, gases, smoke, and occupational hazards.  (*Id*.).  Due to his shoulder pain, he could not reach his left arm above shoulder height.  (R. 84-85).  Then, the ALJ discussed his history of depression and anxiety and determined that, despite these, he was capable of sustaining unskilled work.  (R. 85).

The ALJ discussed at length the effect of each impairment and considered all of Lorenc's symptoms when considering his heart condition, including fatigue and lack of energy, which he asserts are symptoms of his depression.  (R. at 80, 84; doc. 9 at 16).  The record reveals that the ALJ understood her duty to consider the combined effect of Lorenc's impairments and did so in assessing his RFC.  *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir.1987) (finding the ALJ considered the

claimant's combined impairments because of his lengthy consideration of those conditions and his well articulated findings as to their effect on the claimant).

## 2. Lorenc's Ability to Perform Sedentary Work

Lorenc asserts that the ALJ's determination that he could perform sedentary work is not supported by substantial evidence. (Doc. 9 at 17-19). He asserts that, in making this determination, the ALJ erroneously relied on his lack of chest pain while walking on a treadmill during cardiac rehabilitation sessions. (*Id*. at 18-19). He asserts that his peak exertional level of three METS during the sessions was insufficient to show that he could perform sedentary work. (*Id*.).

In assessing RFC, the Commissioner may consider the opinions of "acceptable medical sources," such as physicians and psychologists, and "other sources," such as nurse practitioners. 20 C.F.R. §§ 404.1513(a) & (d)(1), 416.913(a) & (d)(1). Opinions of acceptable medical sources inform her decision as to whether the claimant has an impairment. *Id*. §§ 404.1513(a), 416.913(a). She gives a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id*. §§ 404.1527(c)(2), 416.927(c)(2). Opinions of other sources are relevant only to the severity of the impairment and how it affects the claimant's ability to work. *Id*. §§ 404.1513(d), 416.913(d). In weighing these opinions, the Commissioner considers whether, and the extent to which, the source examined and/or treated the claimant, the evidence supporting the opinion, whether the opinion is consistent with the record, and the source's specialty. *Id*. §§ 404.1527(c), 416.927(c).

The determination of the claimant's RFC and whether he is disabled is reserved to the Commissioner. *Id*. §§ 404.1527(d), 416.927(d). She gives no special

significance to opinions from medical sources on these issues. *Id*. §§ 404.1527(d)(3), 416.927(d)(3). She considers an RFC assessment done by a non-examining state agency physician or psychologist as relevant to what the claimant can do. *Id*. §§ 404.1513(c), 416.913(c).

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. . . .

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

*Id*. §§ 404.1567(a) & (b), 416.967(a) & (b).

Here, substantial evidence supports the ALJ's determination that Lorenc could perform sedentary work. His medical records show that he suffered a heart attack on the onset date and was admitted to the Cullman Regional Medical Center ("RMC") for treatment by cardiologist Dr. Silvio Papapietro. (R. 344-46). He underwent emergency percutaneous coronary intervention of the occlusion site with a bare metal stint. (R. 345-46). The following week, he complained of chest pain, and UAB cardiology department ("UAB") tested and diagnosed him with acute coronary syndrome, with secondary diagnosis of obesity and marijuana abuse. (R. 375).

On December 3, 2010, he saw Dr. Papapietro for a follow-up appointment. (R. 424). He reported doing well with no shortness of breath or chest pain. (*Id*.). There was no evidence of heart failure or recurrent angina. (R. 425). On January 21, 2011,

8

he reported dizziness at a check up at the Good Samaritan Health Clinic ("Good Samaritan").  (R. 429-30).  On January 25, 2011, he was admitted to RMC after reporting chest pain.  (R. 439-41).  Dr. Papapietro observed him for several days.  (*See* R. 441, 443).  He experienced four to five episodes of chest palpitations per day and was transferred to UAB for placement of an ICD.  (R. 457).  Based on these records, the ALJ determined that he could not perform work activity with significant exertional demands.  (R. 82).

The ALJ also considered records of Lorenc's cardiac rehabilitation sessions and follow-up sessions with his doctors after placement of the ICD.  By March 3, 2011, after 18 cardiac rehabilitation sessions, he used an arm ergometer for 7 minutes, a monarch bike for 7 minutes, a Nu-step for 5 minutes, a treadmill at 2.4 miles per hour for 7 minutes, and worked with a trainer for 5 minutes.  (R. 634).  By June 14, 2011, after 36 sessions, he exercised 48 minutes total, including walking on a treadmill for 10 minutes at 3 METs at 2.6 miles per hour.  (R. 694).  He did not complain of chest pain or any other discomforts during these sessions.  (*See* R. 622-94).

On March 24, 2011, he visited Dr. Vance Plumb to follow up on the placement of his ICD.  (R. 513).  He reported no dizziness or lightheadedness, but stated that he had had one episode of chest pain that was relieved by nitroglycerin.  (*Id*.).  He visited Dr. Papapietro in May, 2011.  (R. 511).  He complained of chest discomfort and non-sustained palpitations and underwent a 48-hour Holter monitor, which showed rare supraventricular ectopic beats and frequent ventricular ectopic beats.  (R. 511-12, 508).  He followed up with Dr. Papapietro on July 22, 2011, complaining of a number of symptoms, including exhaustion and chest pain.  (R. 508).  The doctor noted that the etiology of his symptoms was unclear, as his November, 2010 coronary

arteriogram showed normal ejection fraction without significant coronary stenosis. (R. 509). Dr. Papapietro ordered a cardiac catheterization to evaluate the symptoms, but it did not demonstrate any hemodynamically significant coronary stenosis. (R. 727).

In January, 2012, he visited Nurse Practitioner Carol Livingston at Good Samaritan, complaining of chest pain and tightness while walking, and one episode while siting. (R. 572-73). He stated that taking two nitroglycerin relieved the pain. (R. 573). Livingston noted that the pain was consistent with angina, but his EKG showed no significant interval change. (R. 572). He had elevated blood pressure, which corresponded with significant weight gain. (R. 572-73). He visited UAB for a possible cardiac catheterization, but his cardiac enzymes were negative and he was discharged with a primary diagnosis of unstable angina when his pain went away. (R. 532-34, 547).

He subsequently visited Dr. Papapietro, complaining of constant chest pain that he believed was caused by his elevated blood pressure. (R. 536). Upon examination, the doctor remained uncertain of the etiology of the symptoms. (R. 537). A cardiac catheterization performed on January 24, 2012, showed no progression of his coronary artery disease. (R. 841). On May 3, 2012, he visited Dr. Plum for a follow up on his ICD and reported occasional chest pain at rest and with exertion exacerbated by emotional stress and relieved with nitroglycerin. (R. 596). His ICD functioned normally and his physical examination was unremarkable. (R. 597).

The ALJ also considered and assigned some weight to the opinion of Dr. John Maloof, a state agency physician, who on February 24, 2011, reviewed Lorenc's medical records and determined that he could perform light work. (R. 88, 478).

The foregoing substantial evidence supports the ALJ's conclusion that Lorenc could perform sedentary work. He progressed during his cardiac rehabilitative sessions, ultimately exercising for 48 minutes at a time and without ever reporting chest pain. (*See* R. 622-94). After placement of his ICD, he complained of recurrent chest pain, but his treating physicians were unable to link the symptoms to any cardiac problem, and he alleviated the pain with nitroglycerin. (*See* R. 508-09, 511-13, 536-37, 572-73, 596, 727). As of January 24, 2012, his coronary artery disease had not progressed. (R. 841). Finally, a state agency physician reviewed his medical records and determined that he could perform light work, which generally involves greater exertion than sedentary work. (R. 478); *see* 20 C.F.R. §§ 404.1567(a) & (b), 416.967(a) & (b).

While Lorenc asserts that his peak exertional level of three METS during cardiac rehabilitation sessions was insufficient to show he could perform sedentary work, he cites a California regulation that states that a peak exertional level of three METs allows for light work. (Doc. 9 at 18-19). Furthermore, the ALJ did not base her determination solely on the number of METs at which he could walk on a treadmill.

### 3. The Hypothetical Posed to the Vocational Expert

Lorenc asserts that the ALJ posed an incomplete hypothetical question to the VE. (*Id*. at 20-23). He appears to assert that the ALJ should have mentioned his difficulties in concentration, persistence, and pace in the hypothetical. (*See id*. at 21-23).

A VE's testimony constitutes substantial evidence of the existence of other work only if the ALJ poses a hypothetical question comprised of all of the claimant's impairments. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir.

2011).   When the ALJ identifies limitations in the claimant's concentration, persistence, and pace, she must account for this in the hypothetical.  *Id*.  She may do so by determining that the limitations do not affect the claimant's ability to work or by otherwise implicitly accounting for them in the hypothetical.  *Id*. at 1180-81.

Here, the ALJ found that Lorenc's mental impairments caused moderate difficulties with concentration, persistence, or pace.  (R. 79).  She stated that the RFC assessment reflected the degree of these limitations.  (*Id*.).  Specifically, she stated that the mental status examination upon which she based her finding also supported a finding that Lorenc was capable of sustaining unskilled work, despite his mental health impairments.  (R. 85-86).  His mental health impairments limited him to unskilled work, but did not cause symptoms that "would reasonably be expected to substantially interfere with his ability to sustain the concentration, persistence or pace required for this level of work activity. . . ."  (R. 89).

> At the administrative hearing, the ALJ asked the VE,
>
> I want you to assume a person of the claimant's age, education, work experience, and skill set.  And if they were limited - - I'm going to limit to sedentary work that is unskilled in nature, does not involve reaching with the left non-dominant upper extremity above his shoulder; avoiding exposure to temperature extremes, fumes, gases, smoke, hazards like unprotected heights, moving machinery, or commercial driving. Would - -its not going to allow for the past work, since his job was very heavy. . . . Any other jobs in the regional or national economy?

(R. 128).  The VE responded that there was a range of such positions, including document preparer, telephone quotation clerk, and addresser.  The ALJ then asked if the additional limitation of no public interaction would reduce any of those jobs. (*Id*.).  The VE stated that it would eliminate the telephone quotation clerk.  (R. 129).

12

While the ALJ did not explicitly mention Lorenc's mental health impairments and limitations in her hypothetical, she implicitly accounted for them. She found that the limitations did not affect his ability to perform unskilled work. (R. 85-86, 89). Therefore, her hypothetical, which was limited to unskilled work, was complete. *See Winschel*, 631 F.3d at 1180-81.

### 4. Weight Given to Livingston's Medical Source Statement

Finally, Lorenc argues that the ALJ did not give appropriate weight to nurse practitioner Livingston's medical source statement. (Doc. 9 at 23-27).

Lorenc's counsel asked Livingston to complete a "Cardiac Medical Source Statement," a form posing questions and asking her to fill in the blank or check boxes that applied to Lorenc. (R. 613-18). Livingston identified his symptoms as chest pain, weakness, arrhythmia, exertional dyspnea, anginal equivalent pain, exercise intolerance, orthopnea, fatigue, chronic fatigue, dizziness, and palpitations. (R. 614). She stated that he had chest pain every two weeks and would take nitroglycerin and rest for over two hours to relieve the pain. (R. 615). When he took the nitroglycerin, he reported getting a very bad headache and experienced positional dizziness. She checked a box stating that he was incapable of low stress work due to his heart disease, fatigue, depression, and fibromyalgia. (*Id*.). She stated that he could sit and stand/walk for less than 2 hours in an 8-hour day, could only walk a block, and needed to rest for 60 to 90 minutes 4 times in an 8-hour day. (R. 615-16). She also stated that he would be "off task" more than 25 percent of the workday and would miss work more than 4 days per month. (R. 617). She stated that his chronic pain, difficulty concentrating, depression, and anxiety were significant limitations that would affect his ability to work. (*Id*.). She concluded that he was "medically disabled." (R. 618).

The ALJ provided a detailed and thorough explanation regarding the weight she gave Livingston's statement.  (R. 87-88).  Her decision was supported by agency regulations and substantial evidence in the record.  First, because Livingston was a nurse practitioner, and not an acceptable medical source, her opinion was not entitled to controlling weight and was relevant only to what Lorenc could do.  *See* 20 C.F.R. §§ 404.1513(c)(2) & (d), 416.913(c)(2) & (d).  Second, the  standard form medical questionnaire was entitled to little weight because the opinions therein were without explanation and not supported by objective evidence.  *See id*. §§ 404.1527(c)(3), 416.927(c)(3).  Third, some of the symptoms and limitations, which were not reported in Lorenc's other medical records, appeared to be based on Lorenc's self reporting and not an independent examination.  *See id*. §§ 404.1527(c)(1), 416.927(c)(1).

Fourth, her opinions were inconsistent with the record as a whole.  *See id*. §§ 404.1527(c)(4), 416.927(c)(4).  Her determination that he could sit and stand/walk for less than 2 hours in a day, walk a block, and needed rest for 60 to 90 minutes at least four times a day was not supported by his cardiac rehabilitation records or any other evidence.  (*See* R. 615-16, 622-94).  Her opinion that he was incapable of low stress work was contradicted by the testimony of the VE, and the RFC accounted for her concerns regarding the effect of his pain, heart disease, fatigue, and depression on his ability to work.  (*See* R. 80-86, 615).  Fifth, her statement that he was disabled was entitled to no special significance, as she expressed an opinion on an issue reserved for the Commissioner.  (R. 618); *see* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

14

## IV.  CONCLUSION

Based on the reasons set forth above, the decision of the ALJ, as adopted by the Commissioner, denying Lorenc's claim for DIB and SSI is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 9th day of September, 2015.

_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE